IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| JONATHAN L. RINEHART, | * | |
|     Plaintiff, | * | Civil Action File No: |
| | * |     1:13CV 03304 ELR |
| | * | |
| vs. | * | |
| | * | |
| | * | |
| GFI MANAGEMENT SERVICES, INC. | * | |
|     Defendant. | * | |

**BRIEF IN SUPPORT PLAINTIFF'S MOTION TO EXCLUDE THOMAS DAWSON PURSUANT TO DAUBERT V. MERRELL DOW PHARMACEUTICALS, INC, OR IN THE ALTERNATIVE, MOTION IN LIMINE**

Under the standard articulated in Daubert and its progeny, the testimony of Thomas Dawson should be excluded because the methodology by which he reaches his conclusions is not sufficiently reliable; and because his testimony will not assist the trier of fact to understand the evidence or to determine a fact in issue. Specifically, his methodology is completely founded on several false assumptions. His testimony will not assist the trier of fact because the entirety of his opinion violates the evidentiary doctrine against the introduction of collateral source. In the alternative, Dawson should be prevented by Order of this Court from providing any testimony that violates the evidentiary doctrine against

the introduction of collateral source.

## I. STATEMENT OF THE CASE

### A. Fall and Damages

On August 9th, 2009, Mr. Rinehart suffered a permanent spinal cord injury after a fall outside of his apartment at 3630 Clubhouse Circle East-the location of the Kensington Station apartment complex. While trying to get the sliding glass door that separates the living room from the patio back on track, Mr. Rinehart lost his balance and fell against the balcony railing. The balcony railing separated from the building and Mr. Rinehart fell the three stories from his balcony to the ground.

GFI Management Services, Inc. ("Defendant") wants to limit their liability for damages in this case by calling an expert on health insurance plans and health insurance coverage available to Mr. Rinehart. Specifically, Defendant seeks to circumvent the collateral source rule by arguing that it no longer applies to this case after the passage of the Patient Protection and Affordable Care Act ("ACA"). According to the pretrial order in this case, Defendant plans to present this argument through expert testimony by Mr. Thomas J. Dawson ("Dawson").

### B. Dawson's Deposition

Dawson is a founding partner of an applied health policy firm. Earlier in his

career, he worked as an advisor to members of the House of Representatives regarding the effect of the ACA on small businesses. In his own words, Dawson's expertise is "[a]n understanding of insurance law; an understanding of the Affordable Care Act, how it impacts the delivery of care; an understanding of Medicare/Medicaid private insurance; and understanding of the future cost, how one would interpret future cost of care; and a range of issues related to subrogation - who pays, when they pay." (Deposition of Thomas Dawson, pages 33-34, lines 20-22 and 1-5). In this case, Dawson intends to specifically opine on "how this individual will be delivered care in the market, either public or private, now that we have the Affordable Care Act in place, and what its impact ultimately will be on future sort of costs." (Deposition of Thomas Dawson, pages 44-45, lines 21-22 and 1-3). Regarding the collateral source rule, Dawson determined that Congress's passage of the ACA did not constitute "a collateral source in the traditional sense that we think of." (Deposition of Thomas Dawson, page 47, lines 5-6). While Dawson disagrees with the premise that this situation involves the collateral source rule, his analysis leads to a damages calculation of $600,000, making him the only expert to provide a number under $1 million. (Deposition of Thomas Dawson, page 72, lines 14-15). In response to questioning as to why this does not provide a benefit to Defendant that the collateral source rule seeks to avoid,

Dawson settles on the initial premise for his analysis: "the assumption that coverage is not traditional collateral source." (Deposition of Thomas Dawson, page 73, lines 4-5). Perhaps most importantly, Dawson arrived at this number and explained his reasoning under the assumption that Mr. Rinehart would not continue with his current healthcare situation; instead, Defendant had Dawson prepare his analysis based on Mr. Rinehart changing his healthcare plan. (Deposition of Thomas Dawson, pages 73-75).

### C. Summary of Argument

The jury in this case will be asked to make a determination regarding Defendant's liability for damages. To limit these damages, Defendant seeks to introduce expert testimony on Mr. Rinehart's access to affordable healthcare in light of the passage of the ACA. The testimony of Thomas Dawson should be excluded because the methodology by which he reaches his conclusions is not sufficiently reliable; and because his testimony will not assist the trier of fact to understand the evidence or to determine a fact in issue, as required by Daubert.

Specifically, Dawson's methodology is flawed because it assesses that coverage under the ACA is not traditional collateral source and assumes that Mr. Rinehart will elect to change his current coverage.

Dawson testimony will not assist the trier of fact for a few reasons.  At the outset, Mr. Rinehart argues that introduction of this evidence violates the established evidentiary doctrine against introduction of testimony on collateral sources. Secondly, Mr. Rinehart points to the lack of precedent from the 11th Circuit and the state of Georgia in this area. Moreover, Mr. Rinehart illustrates that other parts of the country rejected the very testimony Defendant seeks to introduce. Finally, Mr. Rinehart stresses the importance of avoiding the creation of new law in an area that is potentially subject to many challenges and changes in the near future.

## II. BURDEN OF PROOF

"The proponent of expert testimony bears the burden of showing that the expert's methodology is reliable." Phillips v. American Honda Motor Co., Inc., 238 Fed. Appx. 537, 540 (11th Cir. 2007) (citations omitted). The court must consider the testimony with the understanding that "[t]he burden of establishing qualification, reliability, and helpfulness rests on the proponent of the expert opinion. . . ." McClain v. Metabolife Intern., Inc., 401 F.3d 1233, 1238 (11th Cir. 2005) (citations omitted).

### III. ARGUMENT AND CITATION OF AUTHORITIES

Under the standard articulated in <u>Daubert</u> and its progeny, the testimony of Thomas Dawson should be excluded because the methodology by which he reaches his conclusions is not sufficiently reliable; and because his testimony will not assist the trier of fact to understand the evidence or to determine a fact in issue.

**A.     Gatekeeping Standard**

This circuit requires trial courts acting as gatekeepers to engage in a "rigorous three-part inquiry" assessing whether:

(1)     the expert is qualified to testify competently regarding the matters he intends to address;

(2)     the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in Daubert; and

(3)     the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue.

<u>Hendrix v. Evenflo Company, Inc.</u>. 609 F.3rd. 1183,1194 (11th Cir. 2010).

Plaintiff concedes that Dawson is an expert on the Affordable Care Act. However, under the <u>Daubert</u> standard, the proffered testimony of Thomas Dawson

should be excluded because the methodology by which he reaches his conclusions is not sufficiently reliable as determined by the sort of inquiry mandated in Daubert; and because his testimony will not assist the trier of fact to understand the evidence or to determine a fact in issue.

*B.    The methodology by which Dawson reaches his conclusions is not sufficiently reliable as determined by the sort of inquiry mandated in Daubert*

Dawson's methodology is founded on "the assumption that coverage is not traditional collateral source." (Deposition of Thomas Dawson, page 73, lines 4-5) Additionally, Dawson's opinion is based on the assumption that Mr. Rinehart would not continue with his current healthcare situation; instead, Defendant had Dawson prepare his analysis based on Mr. Rinehart changing his healthcare plan. (Deposition of Thomas Dawson, pages 73-75). This testimony, as the entirety of the testimony, does not rise above subjective belief or unsupported speculation. McCorvey v. Baxter Healthcare Corp., 298 F.3rd. 1253,1256 (11th Cir. 2002)(Trial courts are required to ensure that speculative, unreliable expert testimony does not reach the jury).  Dawson's testimony is speculative and based on inaccurate assumptions, it should be excluded.  Kumho Tire Co. v. Carmichael, 526 U.S. 137, 152, 119 S. Ct. 1167, 1176 (1999).

**C.    *Dawson's testimony will not assists the trier of fact to understand the evidence or to determine a fact in issue*.**

Dawson's testimony will not assist the trier of fact because it violates the long-standing evidentiary doctrine that prohibits introduction of collateral sources. He should either be excluded under <u>Daubert</u>, or in the alternative prohibited from testifying as to any collateral sources.

**i. The evidentiary doctrine against the introduction of collateral sources precludes Dawson's proposed expert testimony.**

The collateral source rule states that "[p]ayments made to or benefits conferred on the injured party from other sources are not credited against the tortfeasor's liability, although they cover all or a part of the harm for which the tortfeasor is liable." (Restatement 2d of Torts, § 920A (1979)). In the commentary to that section of the Restatement of Torts, the authors elaborate by noting that "[t]he law does not differentiate between the nature of the benefits, so long as they did not come from the defendant or a person acting for them." Georgia courts recognize this rule as well, finding that the rule "bars the defendant from presenting any evidence as to payments of expenses of a tortious injury paid for by a third party and taking any credit towards defendant's liability and damages for

such payments." Hoeflick v. Bradley, 282 Ga. App. 123, 124, 637 S.E.2d 832, 833 (2006). This prevents the defendant from mitigating his liability through payments from other sources. Georgia has also eliminated subrogation. O.C.G.A. § 33-24-56.1(e). According to scholarship on this topic, the collateral source rule "is particularly important when full subrogation is prohibited or restricted." *Adam G. Todd*, An Enduring Oddity: The Collateral Source Rule in the Face of Tort Reform, the Affordable Care Act, and Increased Subrogation, 43 McGeorge L. Rev. 965 (2012).

With the passage of the ACA in 2010, questions surrounding its impact on tort law arose. However, the ACA itself and the legislative history surrounding its passage indicate that these questions do not rise to the level of permitting Dawson to violate the collateral source rule. Despite debate in the Senate about whether to incorporate tort reform in the ACA, the bill returned to the House without any tort reform provisions. *Andrew F. Popper*, The Affordable Care Act Is Not Tort Reform, 65 Cath. U.L. Rev. 1 (2015). After the initial passage of the bill into law, subsequent amendments also failed to include tort reform. Id. In fact, the ACA "appears to leave the collateral source rule unchanged despite the Act's otherwise sweeping changes to the health insurance system and aspirations of providing universal healthcare coverage to all Americans." *Todd* at 968.

The connection that Dawson attempts to draw between the ACA and the collateral source rule is tenuous at best. While the legislative history indicates some debate over tort reform, the fact is that tort reform and specifically the collateral source rule were not included in the ACA. If the ACA intended to make such a drastic change to a longstanding evidentiary doctrine, the language would be in the act itself. The leap that Defendant wants to make from inclusion in the ACA to changing the law in this Court is far too great and has not support in the act itself. Moreover, allowing this testimony risks confusing the jury. While Mr. Rinehart does not doubt the expertise of Dawson on the ACA, the average juror has never read or even encountered the immensely complex piece of legislation. An effective way of thinking about the impact of allowing evidence of a collateral source is the use of the balancing test from Federal Rule of Evidence 403. Two of the risks that F.R.E. 403 seeks to mitigate are confusing the issues and misleading the jury. Permitting Dawson to testify risks both of these concerns. Instead, this Court should follow its established stance against allowing the introduction of collateral source evidence.

**ii. Persuasive authority outside of this Circuit and this State illustrates an inclination to decline introduction of this testimony.**

It appears that the course of action Defendant wants this Court to take is an

issue of first impression in both Georgia and the entirety of the 11th Circuit. Therefore, Mr. Rinehart offers persuasive case law from outside the jurisdiction to support his argument. The starting point for this analysis is Pennsylvania, where the District Court discussed this issue. Berheisel v. Mikaya, 2016 U.S. Dist. LEXIS 104554 (2016). There, the court issued a memorandum opinion addressing the preclusion or limitation of future medical expense damages among a variety of topics. Id. at 11-12. This specific section came in response to the defendant's argument that the court should allow cross-examination and the introduction of "evidence pertaining to Medicaid, Medicare, and the Affordable Care Act." Id. at 11. Rather than accepting the defendant's argument, the District Court followed the reasoning outlined by a Pennsylvania Superior Court in response to this very issue by precluding the raising of these issues under the collateral source rule. *See* Deeds v. University of Pennsylvania Medical Center, 110 A.3d 1009 (2015). There, the Superior Court found a "patent violation of the collateral source rule" when the defense suggested Medicaid and the ACA covered the plaintiff's costs. Id. at 1013. The main reason the Superior Court settled on this conclusion that the District Court followed was the potential that the defendant would "impermissibly benefit from the fortuitous existence of a collateral remedy." Id. at 1014.

A few years before Pennsylvania reached this conclusion, a District Court in

Missouri faced a similar issue when a plaintiff sought to bar evidence of healthcare benefits from the Veterans' Administration under the collateral source rule. Cowden v. BNSF Ry. Co., F. Supp. 2d 1106 (2013). There, the court agreed with the plaintiff after finding that the VA benefits "clearly fall within the scope of the collateral source rule." Id. at 1127. The only caveat that the court included in this reasoning was that the defendant would have the opportunity to present rebuttal evidence if the plaintiff put his financial situation at issue. In another section of the opinion, the court addressed the plaintiff's attempt "to exclude any evidence of potential coverage under the Affordable Care Act for his future medical bills." Id. at 1129. Rather than make a decision, the court declined to rule on this issue and included a footnote requiring the defendant to "come forward with authority that any coverage under Affordable Care Act does not constitute a collateral source." Id. at 1130, FN 12.

The analysis from the district courts in Pennsylvania and Missouri provide helpful guidance for this Court. Based on the Pennsylvania court's reasoning in Berheisel and Deeds, this Court should find that the evidence Dawson seeks to introduce is a clear violation of the collateral source rule. While the court in Cowden avoided the question of the ACA, the language in the footnote dictates that the burden is on the defendant to prove why the ACA coverage is not a

collateral source. Combining these different propositions, at the very least Defendant has a high burden to overcome in the attempt to prove that the ACA is not a collateral source. If we take the strongest language, then the question is not a close one. Moreover, the court in Missouri did rule on the benefits from the Veterans' Administration-something that Mr. Rinehart has. This Court should follow the reasoning that led to the conclusion that introducing VA benefits is a violation of the collateral source rule.

### iii. This Court should avoid changing the law on the collateral source rule due to the unsettled nature of the ACA.

In a portion of his deposition, Dawson states that Mr. Rinehart is "required to take up that coverage." (Deposition of Thomas Dawson, page 46, line 17). That is not exactly true since individuals have the right to forego health insurance and pay a penalty. *See generally,* Laxmaiah Manchikanti, Patient Protection and Affordable Care Act of 2010: Reforming the Health Care Reform for the New Decade, Pain Physician: January/February 2011. This sort of nuance is one of many reasons that this Court should avoid making new law surrounding the ACA. These reasons boil down to one reality: the ACA is a confusing and unsettled piece of legislation and courts should exercise caution in changing laws because of

it.

Among the many reasons to wait on any action in this area is the relative newness of the ACA. Just passed in 2010, the ACA is in its infancy given the sweeping changes it seeks to implement. This creates a couple of issues that this Court should consider. For one, questions remain about the long term viability of the ACA. Insurance companies and citizens are still reacting to the legislation and not necessarily in a positive manner. For example, many major insurance companies are pulling out of states because the government-run markets are causing too great of a financial loss. *See Zachary Trace*, Aetna to Quit Most Obamacare Markets, Joining Major Insurers, Bloomberg News (Aug. 15, 2016). Decisions like this affect upwards of a million citizens who had "Obamacare" health plans through these insurance companies. *See* Zachary Tracer, More Than 1 Million in Obamacare to Lose Plans as Insurers Quit, Bloomberg News (Oct. 14, 2016). Outside of the insurance companies and citizens, the nation as a whole is on the verge of an election cycle that will likely impact the future of the ACA.

Another problem that exists is the inability of Defendant to point to other jurisdictions as persuasive authority for this argument. As we saw in Cowden, some courts are avoiding the question of whether the ACA is a collateral source altogether. Others, like the court in Berheisel, clearly state that the ACA is a

collateral source. Regardless of the outcome, Mr. Rinehart points to the simple fact that other circuits are not interpreting the ACA as something exempt from the collateral source rule. Until the ACA stands on more solid footing, this Court should keep the collateral source rule in place to prevent the introduction of testimony on the ACA.

## IV . CONCLUSION

The passage of the ACA in 2010 raised questions about the impact on tort reform. Many of these questions remain unanswered, as the bill became law without the inclusion of major tort reform. The key question surrounding this motion is the continued viability of the collateral source rule as an evidentiary doctrine. It is Mr. Rinehart's position that the collateral source rule should remain intact regardless of the passage of the ACA. First, the ACA does not include language abrogating the collateral source rule. Second, the ACA fits within the traditional definition of a collateral source. Therefore, this law should not be exempt from the strictures of the collateral source rule.

Due to the unsettled nature of the ACA, very few courts have encountered a situation like this one. Among those that have, there is strong language to support the proposition that allowing testimony on the ACA is a violation of the collateral

source rule. Even among those courts unwilling to take that strong of a stance, there is language that imposes the burden on the defendant to show why testimony about the ACA does not violate the collateral source rule. Mr. Rinehart believes that Dawson has failed to meet that burden, and that this Court should exclude his proposed testimony on the topic. Too much uncertainty remains to justify a major shift in the law like the one Defendant proposes in this case.

This 18th day of October, 2016.

/s/ Joseph W. Weeks
Joseph W. Weeks
Attorney for Plaintiff
Georgia Bar No. 912341

McNally Weeks
125 Clairemont Avenue
Suite 450
Decatur, GA 30030-2560
P: 404-373-3131
F: 404-373-7286